**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ABC Sand and Rock Company, Inc., an Arizona corporation; and David Waltemath, an Arizona resident, | No. CV-17-01094-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Maricopa County, a public entity; Flood Control District of Maricopa County, a political subdivision; and William and Jane Doe Wiley; Ed and Jane Doe Raleigh; and Anthony and Jane Doe Beuché, Arizona residents, | |
| Defendants. | |

This case arises from a protracted dispute between ABC Sand and Rock Company and the Flood Control District of Maricopa County ("District") regarding ABC's permission to mine in a floodplain.  ABC and its owner, David Waltemath (collectively, "ABC"), assert claims under 28 U.S.C. §§ 1983 and 1985 against Maricopa County, the District, and three individuals and their spouses – William Wiley, Ed Raleigh, and Anthony Beuché.  Doc. 1-3 at 86-106.  Defendants have filed a motion for summary judgment that is fully briefed.  Docs. 39, 40, 42, 43, 45.  The Court heard oral argument on July 29, 2021.  Doc. 46.  For reasons stated below, the Court will grant Defendants' motion.

1  **I.     Background.**[1]

2          ABC operates a sand and gravel mine in the floodplain at the confluence of the Agua

3  Fria River and New River in Maricopa County, Arizona.  The District regulates and issues

4  permits for mining operations in the floodplain.  *See* A.R.S. § 48-3613(A); Floodplain

5  Regulations for Maricopa County ("FRMC") §§ 401-04.  ABC must obtain an operating

6  permit from the District, and did so from 1985 through May 2011.  *See* Doc. 43 ¶ 17.

7          In February 2011, ABC applied to renew its permit before the permit expired in

8  May 2011.  Separately, on February 14, 2011, ABC sent a letter to the District criticizing

9  operational changes it had made since 2006, including new regulations and permit fees.  *Id.*

10  ¶ 18; Doc. 40-5.  The District denied ABC's renewal application and issued a notice of

11  violation on May 31, 2011.  *See* Doc. 43-2 at 9-18 (Exs. I & J).

12          The District held a violation hearing in September 2011, where ABC argued that it

13  had successfully renewed its most recent five-year permit.  The hearing officer and the

14  District's chief engineer found that ABC had not renewed the permit.  That same month,

15  ABC filed a permit renewal application that provided the District with additional

16  information it had requested in February 2011.  In response, the District issued ABC two

17  permits of short duration that extended its ability to mine in the floodplain until July 16,

18  2012.  On ABC's administrative appeal, the District's Board of Hearing Review ("Board")

19  rejected the chief engineer's order finding that ABC had not renewed its permit, and the

20  District appealed that decision to the superior court.  *See* Doc. 43-2 at 74-75 (Ex. M).

21  ABC's permit of short duration expired in July 2012, but ABC continued mining in the

22  floodplain.

23          On January 28, 2015, on remand from the District's appeal to superior court, the

24  Board found that ABC had not renewed its five-year permit and therefore did not have

25  authorization to mine in the floodplain.  Doc. 43-2 at 77-82 (Ex. N).  This decision was

26

27          ---

          [1] The facts and procedural history of the dispute between ABC and the District are
28  also set forth in a recent decision of the Arizona Court of Appeals.  *See* Doc. 40-4 at 3-9;
   *ABC Sand & Rock Co. v. Flood Control Dist. of Maricopa Cty.*, No. 1 CA-CV 19-0652,
   2021 WL 58145, at *1-5 (Ariz. Ct. App. Jan. 7, 2021).

1   later affirmed on appeal by the superior court (Case No. LC2015-000096) and the Arizona

2   Court of Appeals (Case No. 1 CA-CV 16-0294).  *See* Docs. 40-1 ¶ 5, 40-2 at 3.

3       In February 2015, Defendant Wiley, the District's then chief engineer, informed

4   ABC that it must apply for a floodplain permit and pay the appropriate fee.  Doc. 43-2 at 84

5   (Ex. O).  He further stated that the District would forebear any enforcement action and

6   would issue a permit of short duration if ABC filed an application and paid the fee by

7   March 6, 2015.  *Id.*  Two weeks later, ABC provided the District with an amended plan of

8   development for its expired permit and paid the amended application fee.  *Id.* at 86 (Ex. P).

9       On March 10, 2015, Defendant Beuché (one of the District's civil engineers)

10  prepared and circulated internally a draft permit of short duration for ABC.  *Id.* at 88-92

11  (Ex. Q).  Separately and two days later, ABC emailed several state legislators and urged

12  them to vote no on a proposed bill the District supported.  *Id.* at 98-99 (Ex. T).  That email

13  was forwarded by a third-party to Defendant Raleigh, the District's senior engineering

14  advisor, with the comment, "Wow!"  *Id.*  One day later, the District rejected ABC's renewal

15  application and did not issue the permit of short duration.  *Id.* at 103-08 (Ex. V).

16      On April 15, 2015, the District sent ABC a letter stating that the District was waiting

17  for a response to its March 2015 rejection letter and that, in the meantime, ABC needed to

18  stop mining in the floodplain.  *Id.* at 114-15 (Ex. X).  The letter warned that if ABC did not

19  submit the necessary paperwork and pay the appropriate fee by May 1, 2015, the District

20  would commence a new enforcement action.  *Id.*

21      On May 1, 2015, ABC sent a new application and fee to the District and requested

22  a permit of short duration.  *Id.* at 117-21 (Ex. Y).  On May 8, 2015, Wiley sent ABC a

23  notice of violation and a cease-and-desist letter stating that ABC was mining in the

24  floodplain without a permit.  *Id.* at 122-27 (Ex. Z).

25      ABC met with District employees to discuss ABC's application on June 16, 2015.

26  *See* Doc. 43-1 at 357 (Ex. E).  Two weeks later, Beuché sent ABC a list of requested

27  corrections to the application.  Doc. 43-3 at 23-46 (Ex. AG).  In July and August 2015,

28  Beuché followed up with ABC regarding a revised plan of development and ABC's

1  response to the request for corrections.  *Id.* at 14-17 (Exs. AD-AF).  ABC submitted no

2  response.

3      On November 2, 2015, the District scheduled a hearing on the May 2015 notice of

4  violation.  *Id.* at 38-41 (Ex. AH).  The hearing was held on January 4, 2016.  *See* Doc. 43-4

5  at 2-11 (Ex. AI).  On March 7, 2016, the hearing officer found that ABC had mined in the

6  floodplain without a permit and recommended that Wiley impose a $500 per-day fine for

7  the period from July 30 to November 30, 2015.  *Id.*  On March 21, 2016, Wiley issued an

8  order adopting most of the hearing officer's recommendations, but also imposed a fine of

9  $5,000 on ABC for the period between January 28 and July 30, 2015, and a $2,500 per-

10  day fine from December 23, 2015 until ABC stopped mining in the floodplain without a

11  permit.  *Id.* at 13-24 (Ex. AJ).

12      ABC appealed Wiley's order to the Board.  Following a hearing in June 2016, the

13  Board upheld Wiley's decision to impose fines on ABC, but reduced the continuing daily

14  amount after December 23, 2015 from $2,500 to $1,000.  *See* Doc. 40-4 at 7.[2]

15      ABC appealed the Board's decision to the superior court.  *See ABC Sand & Rock*

16  *Co. v. Flood Control Dist. of Maricopa Cty.*, No. LC2016-000324 (Maricopa Cty. Super.

17  Ct. Aug. 4, 2016).  In August 2017 and at ABC's request, Judge Kerstin Lemaire held a

18  three-day evidentiary hearing to supplement the record.  *See* Docs. 43 ¶¶ 75-76, 43-4 at

19  41-44 (Exs. AO-AP).[3]  On July 23, 2018, Judge Lemaire affirmed the Board's decision.

20  Doc. 40-1.  ABC appealed, and on January 7, 2021, the Arizona Court of Appeals affirmed

21  Judge Lemaire's affirmance of the Board's imposition of fines on ABC through January 4,

---

23  [2] While the appeal to the Board was pending, ABC filed suit for injunctive relief in
24  this Court.  *See ABC Sand & Rock Co. v. Maricopa Cty.*, No. CV-16-01129-PHX-JTT (D.
   Ariz. Apr. 4, 2016).  The case was assigned to Judge John Tuchi, and ABC conducted
   discovery.  *See* Docs. 42 at 7, 43 ¶ 74.  Judge Tuchi found that ABC's claims were not ripe
25  and dismissed the case for lack of jurisdiction.  *See ABC Sand & Rock*, 2016 WL 4507108,
   at *10 (D. Ariz. Aug. 29, 2016).  This was the second time ABC sought federal injunctive
26  relief against the County and the District.  A 2013 case also was dismissed.  *See ABC Sand*
   *& Rock Co. v. Maricopa Cty.*, No. CV-13-00058-PHX-NVW, 2013 WL 6059296 (D. Ariz.
27  Nov. 18, 2013), *aff'd in part as modified sub nom.*, 627 F. App'x 626 (9th Cir. 2015).

28  [3] Meanwhile, the District finished the substantive review process and granted ABC
   a five-year permit on August 10, 2017.  Doc. 43-4 at 35-39 (Ex. AN).  That permit remains
   in effect today.

2016, but vacated any fines after that date because they were not part of the notice of the violation hearing. *See id.* at 15; *ABC Sand & Rock*, 2021 WL 58145, at *9. The Arizona Supreme Court denied review. *See* Doc. 45 at 2 n.1.

ABC filed this case in state court in August 2016. *See ABC Sand & Rock Co. v. Maricopa Cty.*, No. CV 2016-010095 (Maricopa Cty. Super. Ct. Aug. 1, 2016); Doc. 1-1 at 2-15 (ABC's original complaint). In April 2017, ABC filed an amended complaint that asserted five state law claims (counts one through four and count nine), four federal claims (counts five through eight), and claims for injunctive and declaratory relief (counts ten and eleven). Doc. 1-3 at 86-106. Defendants removed the case to this Court based on the new federal claims (Doc. 1 at 1-2), and the Court remanded the state law claims and stayed the federal claims (Doc. 9).[4]

In January 2019, the superior court dismissed ABC's state law claims based on the Arizona Constitution (counts one through four). *See* Doc. 43-4 at 46 (Ex. AQ). The superior court also resolved ABC's state law claims for injunctive and declaratory relief (counts ten and eleven). *See* Doc. 40-2 at 2. Defendants moved for summary judgment on the one remaining state law claim – a regulatory bill of rights claim under A.R.S. § 48-3644 (count nine). Section 48-3644 provides for a private right of action against the District where it has based a permitting decision on a "requirement or condition that is not specifically authorized by statute, rule, regulation, ordinance, executive order or delegation agreement." A.R.S. § 48-3644(A), (E). ABC alleged that the District had based its permitting decision against ABC on an impermissible ground – ABC's political activities. Defendants argued in their motion that ABC could produce no evidence that the District's decision was based on any unauthorized ground. Doc. 40-2 at 4.[5]

_____

[4] After being stayed for several years, this case was reassigned to the undersigned judge in April 2020. Doc. 24.

[5] In federal court, a defendant may move for summary judgment on the basis that the plaintiff cannot come forward with sufficient evidence to prove its claim. If the plaintiff fails to provide such evidence in response, summary judgment may be granted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Arizona follows the same rule. *See Orme Sch. v. Reeves*, 802 P.2d 1000, 1009 (Ariz. 1990) ("If the party with the burden of proof on the claim or defense cannot respond to the motion by showing that there is evidence creating

1    Judge Michael Kemp granted Defendants' motion for summary judgment in

2    September 2020.  Docs. 40-2, 43-4 at 48-52.  He was "not persuaded that the decision by

3    the District to reject [ABC's] renewal [application] was based upon ABC's free speech

4    rights, animus or lobbying efforts," finding that "[n]o credible evidence supports any of

5    these allegations."  Doc. 40-2 at 4.  Judge Kemp entered a final judgment against ABC on

6    November 3, 2020, and denied ABC's motion for a new trial on January 5, 2021.  *See*

7    Docs. 40-3, 43-4 at 54-55 (Ex. AS).  ABC filed a timely notice of appeal on February 4,

8    2021, and the appeal remains pending before the Arizona Court of Appeals.  *See id.*[6]

9    In June 2021, Defendants moved for summary judgment on ABC's federal claims

10   that had been stayed in this Court.  Doc. 39.  ABC did not object to the filing of the motion.

11   Doc. 33 at 2.  ABC's claims are based on freedom of speech, due process, equal protection,

12   and conspiracy (counts five through eight).  Doc. 39; *see* Doc. 1-3 at 101-02.  The Court

13   will grant summary judgment on those claims.

14   **II.    Summary Judgment Standard.**

15   A party seeking summary judgment "bears the initial responsibility of informing the

16   court of the basis for its motion, and identifying those portions of [the record] which it

17   believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.*

18   *Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the moving party

19   shows that there is no genuine dispute as to any material fact and the movant is entitled to

20   judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate

21   against a party who "fails to make a showing sufficient to establish the existence of an

22   element essential to that party's case, and on which that party will bear the burden of proof

23   at trial."  *Celotex*, 477 U.S. at 322.

24

25   _____

26   a genuine issue of fact on the element in question, then the motion for summary judgment
     should be granted."); *Nat'l Bank of Arizona v. Thruston*, 180 P.3d 977, 984 (Ariz. Ct. App.
27   2008).

28   [6] *See also* Judicial Branch of Arizona, Maricopa County, *Civil Court Case*
     *Information – Case History*, http://www.superiorcourt.maricopa.gov/docket/CivilCourt
     Cases/caseInfo.asp?caseNumber=CV2016-010095.

Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and draw justifiable inferences in that party's favor – "[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions," *Anderson*, 477 U.S. at 255.

## III.    Count Five – § 1983 Freedom of Speech Claim.

ABC alleges that "Defendants, acting under color of law, arbitrarily ignored and denied ABC's requests for a permit of short duration for the purpose of retaliating against ABC's exercise of its rights to free speech and to petition the government and to suppress any future exercise of ABC's First Amendment Rights." Doc. 1-3 at 100, ¶ 95. Specifically, ABC claims the District denied ABC's request for a permit of short duration because ABC engaged in various protected political activities:

> For example, ABC, through its principal and other agents of the company, wrote politically charged letters to the District, attended numerous meetings before the District's Board of Directors, submitted criticisms of the District's proposed amendments to its regulations, hired a lobbyist to oppose the District before the Maricopa County Board of Supervisors and the Arizona Legislature, and challenged the District's regulatory actions in court.

Doc. 1-3 at 88, ¶ 10.

Defendants argue that this free speech claim is barred by the doctrine of issue preclusion, also known as collateral estoppel, because Arizona courts have previously determined that ABC was not wrongly denied a permit and lacks sufficient evidence that Defendants acted for political or retaliatory reasons. Doc. 39 at 7-8, 10. The Court agrees that ABC's claim has been litigated in state court and is precluded.

The Court must "give the same preclusive effect to a state-court judgment as another court of that State would give." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S.

280, 293 (2005)); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (same). "This rule holds true for suits brought pursuant to 42 U.S.C. § 1983." *Moore v. Garnand*, No. CV-19-00290-TUC-RM (LAB), 2020 WL 1432838, at *6 (D. Ariz. Mar. 24, 2020) (noting that) (citation omitted). The Court therefore must look to Arizona law to determine the preclusive effect of the state court judgments against ABC. *See Quinn*, 2019 WL 3457703, at *2.

"Arizona generally endorses a 'broad' and 'expansive application of preclusion principles.'" *Sharifi Takieh v. Banner Health*, No. CV-19-05878-PHX-MTL, --- F. Supp. 3d ----, 2021 WL 268808, at *8 (D. Ariz. Jan. 27, 2021) (quoting *Hawkins v. Arizona*, 900 P.2d 1236, 1240 (Ariz. Ct. App. 1995)). Issue preclusion applies when:

> [1] The issue or fact to be litigated was actually litigated in a previous suit, [2] a final judgment was entered, and [3] the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided [4] such issue or fact was essential to the prior judgment.

*Id.* (quoting *Bridgestone/Firestone N. Am. Tire, L.L.C. v. Naranjo*, 79 P.3d 1206, 1211 (Ariz. Ct. App. 2003)) (bracketed numbers added). Arizona courts give "'decisions of administrative agencies acting in quasi-judicial capacity' preclusive effect." *Id.* (quoting *Hawkins*, 900 P.2d at 1239).

Applying this law, the Court finds that ABC's free speech claim is doubly precluded — first by the decisions of Judge Lemaire and the Arizona Court of Appeals in ABC's administrative appeals, and second by the decision of Judge Kemp on ABC's state-law claims that were remanded from this Court.

**A.     ABC's Administrative Appeal – Case No. LC2016-000324.**

As already noted above, the Board upheld Wiley's March 2016 order imposing a fine on ABC for mining in the floodplain without a valid permit. *See* Doc. 40-4 at 7. The Board's decision was affirmed on appeal by both the superior court and the court of appeals. *See* Docs. 40-1, 40-4; *ABC Sand & Rock*, 2021 WL 58145, at *9.

On July 18, 2018, after a three-day evidentiary hearing in August 2017, Judge Lemaire issued an order setting forth her specific findings of fact and conclusions of law.

Doc. 40-1.  She found that "ABC operated a sand and gravel mine in a federally designated floodplain without the requisite permit from July 2012 until August 10, 2017[,]" and that the Board's decision upholding Wiley's imposition of a fine on ABC was supported by substantial evidence and "was neither contrary to law, arbitrary and capricious, nor an abuse of discretion."  *Id.* ¶¶ 32, 43.  With respect to the alleged reasons for the District's denial of a short-duration permit, Judge Lemaire found that, "[a]lthough ABC believes that the District's actions were politically motivated, insufficient evidence exists to support the inference that the withdrawal of the permit was retaliatory."  *Id.* ¶ 9.

Attempting to avoid issue preclusion, ABC argues that Judge Lemaire considered no evidence of Defendants' allegedly retaliatory conduct because she noted that the admission of new evidence "does not expand issues on appeal" and "arguments not made by ABC before the administrative hearing or before the Board . . . are waived and will not be considered."  Doc. 42 at 7-8 (citing Doc. 40-1 ¶¶ 38, 42).  The Court does not agree. There is no doubt from the record that ABC presented its claim of political retaliation to Judge Lemaire and that she found ABC's evidence insufficient to prove this claim.

ABC's March 12, 2015 email to Arizona legislators (Doc. 43-2 at 98-99) — the email that was forwarded to the District with the comment "Wow!" and, according to ABC, was the reason the District denied the permit of short duration — was admitted into evidence before Judge Lemaire and Defendant Wiley was questioned about it.  Doc. 45 at 2 (citing Doc. 45-1 at 9-11 (Aug. 28, 2017 hearing transcript)).  Indeed, when ABC moved the email in to evidence, the District objected because the email had not been presented in the administrative hearing below, but Judge Lemaire overruled the objection. Doc. 45-1 at 4, 9 (Ex. 364).  On direct examination, Wiley agreed that in sending the email ABC was "exercising [its] Constitutional prerogative to petition members of the legislature to vote no on a bill[.]"  *Id.* at 9.

ABC argued before Judge Lemaire that it exercised its first amendment rights and had "direct evidence of retaliation."  *Id.* at 6.  Specifically, ABC argued:

Judge, . . . we're going to present testimony that there is bias on the part of the chief engineer; that this is retaliation on the part of the chief engineer; and that there's disparate treatment [as to] how we're treated with respect to every other sand and gravel mine.  Judge, you'll hear that in the history of the District the only time a temporary permit has ever been denied is in our case.  . . . .

Judge, we have direct evidence of retaliation.  On February 12th, [2015], the chief engineer writes a letter saying if you apply for a permit, I'll grant you a temporary permit.  On March 20th, [2015], a temporary permit is actually drafted by Tony Beuche and they have internal emails saying they will issue it as soon as we get the next application.

Two days later the chief engineer gets an email that ABC is lobbying at the legislature against the taxing district sought by the Flood Control District. Judge, that March 20th, [2015], permit was never heard of again. . . .  So I think we can show you direct evidence of retaliation.

*Id.* at 5-7.[7]

Further, the Court of Appeals' decision makes clear that Judge Lemaire did in fact consider evidence and argument that the denial of the short-duration permit was retaliatory and politically motivated.  The Court of Appeals noted that Judge Lemaire "rejected ABC's argument that the denial of its permit of short duration was politically motivated."  *ABC Sand & Rock*, 2021 WL 58145, ¶ 24.  Addressing ABC's claim that the District acted in retaliation for ABC's political activities, the Court of Appeals further observed that ABC "presented evidence supporting its argument, and the trial court rejected it."  *Id.* ¶ 37.[8]

The Court of Appeals likewise addressed ABC's lobbying efforts in its decision. *See ABC Sand & Rock*, 2021 WL 58145, ¶ 5 ("[I]n March 2015, ABC's owner emailed several legislators urging them to vote no on a proposed legislative house bill.  That email was circulated back to Edward Raleigh, the District's senior engineering advisor.  The

---

[7] The parties agree that these events occurred in 2015, not in 2012 as ABC's counsel initially stated in his arguments to Judge Lemaire.  *See* Doc. 43 ¶¶ 31-38.

[8] ABC suggests that its ability to present a full retaliation case was hampered by Defendants' assertion of privilege before Judge Lemaire.  But the Court of Appeals found that the District's privilege assertion was proper and that "its assertion of privilege did not deny ABC any access to information vital to its defense."  *Id.*

- 10 -

1    following day, the District's counsel sent ABC a letter rejecting its permit application.").

2    The Court of Appeals also discussed other evidence of the alleged retaliation.  *See id.* ¶ 6

3    (the draft permit of short duration was circulated within the District); ¶¶ 20, 22 (no other

4    permit of short duration had been denied); ¶ 23 (ABC's lobbying against the District's

5    proposed rule amendment in 2011).  Despite this evidence and ABC's claim that it shows

6    improper retaliation, the Court of Appeals found that the District's denial of the permit of

7    short duration was proper.  The court found that substantial evidence supported the Board's

8    finding that "ABC did not act diligently or in good faith" in pursuing the permit.  *Id.* ¶ 43.

9    And "[b]ecause ABC did not pay the appropriate permit application fee until May 2015

10   and then withdrew its request for a permit of short duration in June 2015, the District did

11   not unlawfully refuse to grant ABC's 2015 permit requests."  *Id.* ¶ 39.  The Court of

12   Appeals further found that "ABC was . . . not improperly fined for the period during which

13   the District was reviewing its responses [because] ABC was mining in the floodplain

14   without a permit during this time."  *Id.* ¶ 44.

15        ABC also claims that its opportunity to litigate its retaliation claim before Judge

16   Lemaire and the Court of Appeals was hampered by the fact that the initial administrative

17   proceeding did not provide for pre-hearing discovery and ABC therefore was unable to

18   learn that the District had denied ABC a permit because of its political speech.  Doc. 42

19   at 11 (citing A.R.S. § 9-5001.21).  But ABC provides no description of the procedures that

20   were followed in the administrative proceeding, and rather conspicuously disregards the

21   fact that it conducted discovery on these very issues in the 2016 federal case before Judge

22   Tuchi – issuing document requests, taking depositions, and participating in an evidentiary

23   hearing where multiple witnesses testified.  *See* Docs. 42 at 7, 43 ¶ 74; *see also* Case No.

24   CV-16-01129-PHX-JTT, Docs. 20, 33, 46, 48 (discovery notices and witness and exhibit

25   lists), 53 (first day hearing transcript), 55 (second day hearing transcript).  The discovery

26   in Judge Tuchi's case was conducted in mid-2016, well before the August 2017 hearing

27   before Judge Lemaire.  At the hearing before Judge Lemaire, ABC presented the same

28   evidence of retaliation it seeks to use in this Court, including the March 2015 lobbying

1    email that was forwarded to the District, the timing of the District's denial after receiving

2    the email, and ABC's 2011 lobbying activities.  The record does not support ABC's claim

3    that it was denied the opportunity to discover facts needed for its retaliation claim.[9]

4         ABC's litigation of this issue satisfies every element of issue preclusion under

5    Arizona law.  Its claim that the District denied the short-duration permit in retaliation for

6    ABC's political activities was (1) "actually litigated" before Judge Lemaire and the Court

7    of Appeals, (2) "a final judgment was entered," and (3) ABC "had a full opportunity to

8    litigate the matter and actually did litigate it." *Sharifi Takieh*, 2021 WL 268808, at *8.  The

9    issue was also (4) essential to the state court judgments because Judge Lemaire and the

10   Court of Appeals would not have found that the Board's decision "was neither contrary to

11   law, arbitrary and capricious, nor an abuse of discretion" if the District acted in retaliation

12   for ABC's constitutionally protected political speech.  Doc. 40-1 at 6, ¶ 43.

13        The same retaliation claim lies at the heart of ABC's free speech count in this Court.

14   *See* Doc. 1-3 at 100.  Because that claim is barred by issue preclusion, the Court must grant

15   summary judgment on count five.  *See Sharifi Takieh*, 2021 WL 268808, at *13.

16        **B.    ABC's State Court Case – No. CV 2016-010095.**

17        ABC also litigated the retaliation issue before Judge Kemp in 2020.  As already

18   noted, ABC sought to recover damages for violation of A.R.S. § 48-3644, which applies

19   when a state agency's decision is based on a factor not included in statutes or regulations.

20   ABC claimed that the District's adverse decisions were based on ABC's political activities,

21   not on any statutory or regulatory criteria, and that ABC therefore was entitled to damages

22   under the state statute.  Defendants moved for summary judgment, arguing that ABC had

23   no evidence to support this claim.  ABC filed its response in July 2020, several years after

24   it had discovered the full scope of the alleged retaliation.  *See* Docs. 42 at 2, 7; 43 ¶ 74.[10]

25   

26        [9] Indeed, ABC made many of the same arguments before Judge Tuchi, asserting that
     the District's 2011 actions "were the beginning of the District's retaliation against ABC in
27   response to ABC's vocalization of its political views," *ABC Sand & Rock*, 2016 WL
     4507108, at *2, and that the retaliation continued well into 2015, Case No. CV-16-01129-
28   PHX-JTT, Doc. 53.

          [10] *See also* Judicial Branch of Arizona, Maricopa County, *Civil Court Case*

Judge Kemp, however, was "not persuaded that the decision by the District to reject the renewal [application] was based upon ABC's free speech rights, animus, or lobbying efforts.  No credible evidence supports any of these allegations." Doc. 40-2 at 4.

Like the decisions of Judge Lemaire and the Court of Appeals in the administrative appeal, Judge Kemp's decisions satisfies all the requirements of Arizona issue preclusion. ABC's claim that the District denied the permit of short duration in retaliation for political activities (1) was "actually litigated" before Judge Kemp when Defendants motion for summary judgment required ABC to come forward with its proof, (2) "a final judgment was entered," and (3) ABC "had a full opportunity to litigate the matter and actually did litigate it." *Sharifi Takieh*, 2021 WL 268808, at *8.  The issue was also (4) essential to the state court judgment because Judge Kemp would not have found ABC's claim under A.R.S. § 48-3644 unfounded if ABC could show that the District's decision was based on political retaliation.

Seeking to avoid issue preclusion, ABC contends that Judge Kemp improperly weighed the evidence and notes that it has appealed his decision to the Arizona Court of Appeals.  Doc. 42 at 8 (citing Doc. 43 ¶¶ 83-84).  But the doctrine of issue preclusion asks whether the issue was litigated and decided, not whether it was decided correctly.  And "[u]nder Arizona law, the fact that the decision is on review does not prevent application of collateral estoppel[.]"  *Cameron v. Ariz. Bd. of Regents*, No. CV 08-01490-PHX-ROS, 2011 WL 13137864, at *2 n.3 (D. Ariz. Apr. 22, 2011) (citing *Ariz. Downs v. Superior Court*, 623 P.2d 1229 (Ariz. 1981)); *see Sharifi Takieh*, 2021 WL 268808, at *8 (same); *Sparlin v. Quicken Loans Inc.*, No. 11-CV-372-TUC-RCC, 2011 WL 13233478, at *2 (D. Ariz. Nov. 22, 2011) (noting that for issue preclusion purposes, "[j]udgments are final notwithstanding that they have been appealed") (citing *Murphy v. Bd. of Med. Exam'rs of State of Ariz.*, 949 P.2d 530, 538 (Ariz. Ct. App. 1997)).

*Information – Case History*, http://www.superiorcourt.maricopa.gov/docket/CivilCourtCases/caseInfo.asp?caseNumber=CV2016-010095 (last visited Aug. 4, 2021); *Warden v. Magnus*, No. CV-18-00096-TUC-LCK, 2020 WL 1511091, at *3 (D. Ariz. Mar. 30, 2020) ("[T]he Court properly considers Arizona state court records in deciding a matter of issue preclusion arising from a state court proceeding.") (citing *Holder v. Holder*, 305 F.3d 854, 864 (9th Cir. 2002)).

1    The Court concludes that Judge Kemp's decision (Docs. 40-2, 40-3) should be given

2    preclusive effect.  *See Quinn*, 2019 WL 3457703, at *2; *Sharifi Takieh*, 2021 WL 268808,

3    at *13.  ABC's free speech claim therefore is also barred by issue preclusion based on the

4    proceedings in Case No. CV 2016-010095.

5    **IV.    Count Six – § 1983 Due Process of Law Claim.**

6        ABC alleges that it has a protected property interest in its ability to mine in the

7    floodplain and that Defendants "have arbitrarily and irrationally interfered with ABC's

8    protected property interest" and have "violated ABC's rights to substantive due process[.]"

9    Doc. 1-3 at 101, ¶¶ 99, 102-03.  Defendants argue that count six fails as a matter of law

10   because ABC has established no constitutionally protected property interest, ABC received

11   ample procedural due process, and the denial of a permit does not "shock the conscience."

12   Doc. 39 at 10-13.   The Court agrees.

13       **A.    ABC Has No Constitutionally Protected Property Interest.**

14       "The United States Supreme Court has defined the boundaries of a 'property

15   interest' in the context of the Fourteenth Amendment: 'To have a property interest in a

16   benefit, a person . . . must have more than a unilateral expectation of it.  He must, instead,

17   have a legitimate claim of entitlement to it.'"  *Braswell v. Shoreline Fire Dep't*, 622 F.3d

18   1099, 1102 (9th Cir. 2010) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564,

19   577 (1972)).  "State law creates a 'legitimate claim of entitlement' giving rise to a protected

20   property interest if it imposes significant limitations on the discretion of the decision

21   maker."  *Id.* (citations and alterations omitted).

22       Defendants argue that ABC has no protected property interest under the Fourteenth

23   Amendment because "there are no limitations on the District's discretion as to whether to

24   issue permits of short duration" for mining in a flood plain.  Doc. 39 at 11 (citing FRMC

25   §§ 403(B)(3), 404(B)(4)).   ABC does not address this argument in its response.  *See*

26   Docs. 42 at 17, 45 at 5.[11]

27

28       [11]  ABC alleges in its complaint that "Arizona's Regulatory Bill of Rights, codified
     in part at A.R.S. §§ 48-3641 through -3650, and the FCD Regulations – govern the
     applicable licensing process and impose significant substantive restrictions on the

1    Defendants note, correctly, that there are no restrictions with regard to permits of

2    short duration.  Doc. 39 at 11.  The applicable regulations provide that the District "*may*

3    issue a permit of short duration for an applicant participating in an ongoing application

4    process."  FRMC §§ 403(B)(3) (application requirements), 404(B)(4) (permit conditions)

5    (emphasis added); *see also* Docs. 39-1 at 10-11, 43-1 at 393-94.  But this grant of unfettered

6    discretion gives ABC no "legitimate claim of entitlement" to a permit of short duration,

7    and therefore no constitutionally protected property interest in such a permit.  *See Braswell*,

8    622 F.3d at 1102 ("Plaintiff points to no Washington statute or regulation that limits a

9    medical director's discretion to revoke a paramedic's permission to practice under his or

10   her license.  Without such a limit on a medical director's authority to revoke a paramedic's

11   permission to practice, Plaintiff could not have a 'legitimate claim of entitlement' to that

12   permission.").

13   **B.     ABC Received Procedural Due Process.**

14   To establish a procedural due process claim under the Fourteenth Amendment, ABC

15   must show not only that Defendants have deprived it of a protected property interest, but

16   also that Defendants have done so without due process of law.  *See King v. City & Cty. of*

17   *S.F.*, No. 21-CV-02843-AGT, 2021 WL 3111633, at *2 (N.D. Cal. July 22, 2021) (citing

18   *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985)).  Defendants argue that ABC

19   has had a "mountain of procedural due process," including hearings before administrative

20   law judges and various review boards, direct actions and appeals in superior court, and

21   appeals to the Arizona Court of Appeals.  Doc. 39 at 12.

22   ABC does not dispute that it has litigated the dispute at the administrative level,

23   before trial courts, and on appeal.  ABC instead contends that "[n]one of the 'mountains'

24   of litigation has allowed [it] to present the full scope of the motivation behind

25   [Defendants'] behavior" because "their internal procedures prevent discovery."  Doc. 42

26

27   [District's] decision-making authority."  Doc. 1-3 at 101, ¶ 101.  But as the party opposing summary judgment, ABC "may not rest upon the mere allegations . . . of [its] pleading[.]"

28   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *see* LRCiv 56.1(b) (requiring the party opposing summary judgment to present evidence that establishes a triable issue or otherwise precludes judgment in favor of the moving party).

at 17.  But as already noted, ABC conducted discovery in the case before Judge Tuchi on the basis for the District's action.  ABC also had the full benefit of the Arizona Rules of Civil Procedure in its state court claims before Judge Kemp.  And ABC presents no argument and cites no legal authority showing that the District's administrative hearing procedures are defective.  The Court concludes that ABC has received all the procedural process it is due under the Fourteenth Amendment.  *See, e.g.*, Doc. 40-2 at 2 (Judge Kemp's order explaining that this litigation "has spanned some nine years, including multiple administrative actions, several related lawsuits including a federal civil suit, an appeal to the Ninth Circuit, and three appeals to the Arizona [C]ourt of Appeals").

C.     **The Denial of a Permit Does Not "Shock the Conscience."**

"The Supreme Court has held that 'the substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'"  *Williams v. Fresno Cty. Dep't of Soc. Servs.*, No. 1:21-cv-00596-DAD-SAB, 2021 WL 3033578, at *6 (E.D. Cal. July 19, 2021) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)).  "[O]nly the most egregious official conduct can be said to be arbitrary in a constitutional sense."  *Brittain v. Hansen*, 451 F.3d 982, 990 (9th Cir. 2006) (quoting *Lewis*, 523 U.S. at 846); *see King*, 2021 WL 3111633, at *2 ("To the extent King is alleging a substantive due process claim, he must also allege 'conscience shocking behavior by the government.'") (quoting *Brittain*, 451 F.3d at 991).

ABC contends that the shocking conduct is "the District's clear animus and arbitrary decision-making following ABC's politically protected speech."  Doc. 42 at 17 (citing Doc. 43 ¶¶ 18, 22, 33-42).  But two state court trial judges and the Arizona Court of Appeals have already ruled that the District's decisions were not arbitrary or based on animus.  ABC is precluded from relitigating that issue here.

V.     **Count Seven – § 1983 Equal Protection Claim.**

ABC alleges that Defendants initiated enforcement actions and imposed sanctions on ABC without imposing sanctions on similarly situated mining operations, and that "no

1  rational basis exists[] for treating ABC differently than other similarly situated businesses."

2  Doc. 1-3 at 102, ¶¶ 109-10.

3       "The Equal Protection Clause ensures that 'all persons similarly situated should be

4  treated alike.'"  *Borges v. Cty. of Mendocino*, 506 F. Supp. 3d. 989, 999 (N.D. Cal. 2020)

5  (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  "The

6  Supreme Court has recognized that 'an equal protection claim can in some circumstances

7  be sustained even if the plaintiff has not alleged class-based discrimination, but instead

8  claims that she has been irrationally singled out as a so-called 'class of one.'"  *Gerhart*,

9  637 F.3d at 1021 (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)).  ABC

10  asserts such a "class of one" equal protection claim.  *See* Docs. 39 at 13, 42 at 18.

11       Defendants argue that the "class of one" standard does not apply to discretionary

12  decisions and that ABC's claim fails because "the short duration permit sought was

13  discretionary and the permits were highly individualized and subjective[.]"  Doc. 39 at

14  13-14 (citing *Engquist*, 553 U.S. at 602-04.  Defendants further argue that ABC cannot

15  show that the decision to deny a short-duration permit was irrational.  *Id.* at 14 (citing

16  *Munoz v. Sullivan*, 930 F.2d 1400, 1404 (9th Cir. 1991).  The Court agrees with both points.

17       ABC does not dispute that the District had discretion to deny a permit of short

18  duration under FRMC §§ 403(B)(3) and 404(B)(4).  This fact requires summary judgment

19  on the equal protection claim.  *See Engquist*, 553 U.S. at 602-04 ("There are some forms

20  of state action . . . which by their nature involve discretionary decisionmaking based on a

21  vast array of subjective, individualized assessments.  In such cases the rule that people

22  should be 'treated alike, under like circumstances and conditions' is not violated when one

23  person is treated differently from others, because treating like individuals differently is an

24  accepted consequence of the discretion granted.").

25       ABC argues that "the District continued to treat ABC differently from other sand

26  and gravel extraction companies – those that did not oppose the developmental and political

27  views of the District."  Doc. 42 at 18.  But the state court judgments against ABC preclude

28  it from claiming that its political speech was a substantial factor in the District's decision

1     to deny a short-duration permit.  Nor can ABC show that the decision to deny the permit

2     was irrational – that issue was litigated and decided against ABC in the state courts.  *See*

3     Doc. 40-2 at 4 (finding that ABC "sent in the wrong fee and submitted an application to

4     amend a permit that did not exist," and that the District's requirement that ABC "be in

5     substantial compliance with a prior plan of development before issuing a permit [was]

6     within its discretion"); *ABC Sand & Rock*, 2021 WL 58145, ¶ 39 ("Because ABC did not

7     pay the appropriate permit application fee until May 2015 and then withdrew its request

8     for a permit of short duration in June 2015, the District did not unlawfully refuse to grant

9     ABC's 2015 permit requests.").

10    **VI.   Count Eight – § 1985 Conspiracy Claim.**

11            Count eight alleges that Defendants "conspired against ABC in a manner that

12    resulted in the deprivation of ABC's constitutional rights . . . of free speech, due process,

13    and equal protection[.]"  Doc. 1-3 at 102, ¶¶ 113-14.  The granting of summary judgment

14    on ABC's free speech, due process, and equal protection claims is fatal to this conspiracy

15    claim.  *See Coats v. L.A. Police Dep't*, No. CV-18-10135-DSF-JPR, 2019 WL 266967,

16    at *6 (C.D. Cal. Jan. 18, 2019) ("[T]he absence of a section 1983 deprivation of rights

17    precludes a section 1985 conspiracy claim predicated on the same allegations.") (quoting

18    *Kulkarni v. Upasani*, 659 F. App'x 937, 939-40 (9th Cir. 2016)).

19            ABC also has failed to show the requisite class-based invidious discrimination.

20    ABC brings its conspiracy claim under § 1985(3).  *See* Doc. 42 at 19.[12]  Section 1985(3),

21    known as the ku klux klan act of 1871, "was enacted by the Reconstruction Congress to

22    protect individuals – primarily blacks – from conspiracies to deprive them of their legally

23    protected rights."  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).  To

24    establish a claim "under § 1985(3), a plaintiff must demonstrate a deprivation of a right

25    motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory

26    animus behind the conspirators' action."  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d

27

28            [12] ABC does not allege that Defendants conspired to prevent an officer from performing his duties, *see* § 1985(1), or that Defendants conspired to obstruct justice, *see* § 1985(2).

1045, 1056 (9th Cir. 2002) (quoting *Sever*, 978 F.2d at 1536); *see also Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971) (same); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (same and noting that *Griffin* "recognized the "constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law"). Section 1985(3) extends beyond race "only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." *Sever*, 978 F.2d at 1536 (citations and quotation marks omitted). ABC does not attempt to make such a showing.

Defendants also correctly argue that the § 1985(3) claim fails because ABC has no evidence of a conspiracy or class-based animus. Doc. 39 at 15. ABC presents no evidence that Defendants had "an agreement or meeting of the minds" to deprive ABC of its constitutional rights. *Rojas-Vega v. United States*, No. 18CV2114-LAB (MDD), 2018 WL 4680136, at *3 (S.D. Cal. Sept. 28, 2018) (citing *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)). With respect to class-based animus, ABC asserts that it was put into a "class of citizens" that "oppose the political views and thus the end goals of the District and its individual representatives." Doc. 42 at 19. But this purported "class of citizens" does not suffice. For purposes of § 1985(3), "[t]he Ninth Circuit requires 'either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection.'" *Williams v. Cty. of Fresno*, No. 1:21-cv-00648-AWI-SAB, 2021 WL 3052526, at *5 (E.D. Cal. July 20, 2021) (quoting *Sever*, 978 F.2d at 1536)). ABC has made no such showing with respect to its alleged "class of citizens."

## VII.   Municipal Liability Under §§ 1983 and 1985.

Under §§ 1983 and 1985, a municipality "may not be held responsible for the acts of its employees under a respondeat superior theory of liability." *Williams*, 2021 WL 3052526, at *8 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see Coats*, 2019 WL 266967, at *6 (noting that "[t]he *Monell* municipal-liability doctrine applies to claims under § 1985(3)"). Instead, a municipality "can only be held liable for injuries

caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy."  *Williams*, 2021 WL 3052526, at *8 (citing *Monell*, 436 U.S. at 694); *see Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) ("To [establish municipal liability], a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit.") (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)).  It is not enough for ABC merely to identify conduct attributable to the County or the District as employers.  ABC must show that, through their deliberate conduct, the County and the District were the "moving force" behind the injury alleged.  "[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

ABC identifies no policy or custom of Maricopa County that caused the alleged constitutional deprivations.  ABC asserts that the District's policy was to defer to the chief engineer (Defendant Wiley) on permits of short duration, *see* FRMC § 403(B)(3), and that this policy permitted a constitutional deprivation.  Doc. 42 at 12.  But as noted above, the decision to issue a permit of short duration under § 403(B)(3) is discretionary.  The Supreme Court has explained that "[t]he fact that a particular official – even a policy-making official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."  *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 481-82 (1986)); *see Fonseca v. Humboldt Cty., Nev.*, No. 3:09-CV-0586-LRH-VPC, 2010 WL 3636206, at *3 (D. Nev. Sept. 10, 2010) ("An individual's exercise of discretion or an isolated departure from established and lawful policy, cannot constitute a bases for municipal liability.") (citing *Pembaur*, 475 U.S. at 479-80); *Zhu v. Bridgeport Sch. Dist. No. 75*, No. 2:15-CV-0263-TOR, 2016 WL 7330583, at *7 (E.D. Wash. Dec. 16, 2016) ("An employee with delegated discretion to act, like superintendent Sattler, who allegedly

deviates from a local government entity's policy, is insufficient to establish municipality liability.") (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126-27 (1988)).

"[T]he one-time, isolated act of an employee is typically insufficient to impose liability." *Altamirano v. Pima Cty.*, No. CV-15-00169-TUC-RM, 2016 WL 11720201, at *3 (D. Ariz. Mar. 2, 2016) (citing *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999)); *see Bahra v. Cty. of San Bernardino*, No. EDCV 16-1756 JGB (SPx), 2018 WL 6133664, at *8 (C.D. Cal. Jan. 26, 2018) ("To allege *Monell* liability based on 'custom' or 'practice,' liability 'may not be predicat[ed] on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.'") (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). ABC presents no evidence of a consistent District or County policy to deny permits of short duration.

## VIII.   Qualified Immunity.

The individual Defendants contend that they are entitled to qualified immunity. Doc. 39 at 9. The Supreme Court has mandated a two-step sequence for resolving qualified immunity claims. "First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In this case, the individual defendants are entitled to qualified immunity because ABC has not shown violation of a constitutional right. This is another basis for summary judgment in their favor.

**IT IS ORDERED:**

1.     Defendants' motion for summary judgment (Doc. 39) is **granted**. Summary judgment is granted on all remaining federal claims (counts five through eight).

2.     The Clerk of Court shall enter judgment accordingly.

Dated this 9th day of August, 2021.

*David G. Campbell*

David G. Campbell
Senior United States District Judge